# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **WILLIAM ROGOPOULOS,** ) | |
| ) | |
| Petitioner, ) | Case No. 7:21CV00418 |
| ) | |
| v. ) | **OPINION** |
| ) | |
| **WARDEN DANA RATLIFF WALKER,** ) | JUDGE JAMES P. JONES |
| ) | |
| Respondent. ) | |

*William Rogopoulos, Pro Se Petitioner; Laura Maughan, Assistant Attorney General,* OFFICE OF THE ATTORNEY GENERAL, *Richmond, Virginia, for Respondent.*

William Rogopoulos, a Virginia inmate proceeding pro se, filed this Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241.[1] He contends that because of alleged violations of the Interstate Agreement on Detainers ("IAD") related to a detainer from Massachusetts, I should dismiss that detainer. After review of the record, I conclude that the Respondent's Motion to Dismiss must be granted.

I.

The IAD is a compact among forty-eight states, the federal government, and others that "creates uniform procedures for lodging and executing a detainer, i.e., a legal order that requires a State in which an individual is currently imprisoned to

---

[1] Rogopoulos filed his Petition in the United States District Court for the Eastern District of Virginia. It was transferred to this court because at the time of filing, he was confined at a prison facility within this judicial district.

hold that individual when he has finished serving his sentence so that he may be tried by a different State for a different crime." *Alabama v. Bozeman*, 533 U.S. 146, 148 (2001). Virginia and Massachusetts are participating states. Va. Code Ann. § 53.1-210; Mass. Gen. Laws Ann. ch. 276, App. §§ 1-1 through 1-8. When a detainer is filed, it provides a uniform procedure for inmates or prosecutors to resolve criminal charges against criminal defendants who are already incarcerated, serving sentences in other states, without having to wait until the defendant's prison term is completed.

Article III(c) of the IAD provides:

> The warden, commissioner of corrections, or other official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment, information, or complaint on which the detainer is based.

Va. Code Ann. § 53.1-210. Under the IAD, when an inmate serving a prison sentence makes an appropriate request to the warden or other custodian for disposition of an outstanding charge against him in another state, the warden must then forward the request to the prosecutor and court in that "receiving" state. The receiving state then has 180 days to retrieve that inmate for resolution of its outstanding charges against him. *Id.*, Art. III(a). A prosecutor may request disposition of an inmate's charge and, in so doing, must bring the inmate to trial within 120 days of his arrival in the prosecuting jurisdiction. *Id.*, Art. IV(c).

Rogopoulos states that he was sentenced for Virginia criminal convictions on September 17, 2009, in Appomatox County Circuit Court. Shortly thereafter, on September 30, 2009, he entered the custody of the Virginia Department of Corrections ("VDOC").[2] M. Cale, supervisor for VDOC Detainer Unit, states that on November 13, 2014, the Detainer Unit received a letter from an Assistant District Attorney in Middlesex County, Massachusetts, requesting a detainer for Rogopoulos based on an outstanding warrant from Middlesex Superior Court, Docket 0481CR000968, charging Rogopoulos with two counts of indecent assault and battery on a child under fourteen and three counts of rape of a child, statutory. An "Offender Detainer Notification" document in the record, under the heading "Detainer Information," indicates June 9, 2008, as the "Date Issued" and November 13, 2014, as the "Date Received." Pet. 23, ECF No. 1.[3] On November 18, 2014, VDOC Detainer Unit sent a letter to the Middlesex District Attorney's office, stating: "A detainer has been filed against [Rogopoulos] in your favor" based on the referenced charges. Mem. Supp. Mot. Dismiss Cale Aff. Enclosure A, ECF No. 19-1.

---

[2] The facts relevant to Rogopoulos's claims, taken from the Petition and documentation the parties have attached to their pleadings, are largely undisputed, except where otherwise noted.

[3] For clarity, page numbers cited in this Opinion refer to the page numbers assigned to the documents by the court's electronic filing system.

VDOC Detainer Unit sent IAD forms to Lawrenceville Correctional Center for Rogopoulos to review. The "AGREEMENT ON DETAINERS FORM I" is subtitled "NOTICE OF UNTRIED INDICTMENT, INFORMATION OR COMPLAINT AND OF RIGHT TO REQUEST DISPOSITION." Cale Aff. Enclosure B, ECF No. 19-1. This form also states: "DETAINER FILED **Middlesex County, Woburn, Massachusetts charging Two Counts of Indecent A&B on Child under 14, 3 Counts Rape of Child, Statutory.**" *Id.* "AGREEMENT ON DETAINERS FORM II" is subtitled "INMATE'S NOTICE OF PLACE OF IMPRISONMENT AND REQUEST FOR DISPOSITION OF INDICTMENTS, INFORMATIONS OR COMPLAINTS." *Id.* A portion of this form includes a place for the inmate to sign, indicating a request for appointment of counsel. The copies in the Detainer Unit's records indicate that on December 5, 2014, Rogopoulos refused to sign any of these forms. Detainer Unit records also included a similar set of forms dated June 27, 2018, when Rogopoulos was confined at Nottoway Correctional Center. Handwritten notes on the forms by a prison counselor indicate that on July 13, 2018, Rogopoulos refused to sign the forms to request disposition of the Massachusetts charges underlying the detainer. In a letter dated July 18, 2018, Cale notified the Middlesex District Attorney that Rogopoulos did not wish to file for speedy disposition of the outstanding criminal charges in Massachusetts.

Rogopoulos claims that he first learned of the detainer against him sometime in 2020 during an Annual Review with his counselor at Dillwyn Correctional Center ("Dillwyn").  He states that he sent a written request to the warden of Dillwyn for resolution of the Massachusetts detainer "and was ignored." Pet. 14, ECF No. 1. Attached to the Complaint is a copy of a handwritten document addressed to the warden of Dillwyn, regarding "FINAL DISPOSITION DETAINER FOREIGN STATE." *Id.* at 24-25.  The text of this document indicates that Rogopoulos wanted to excise his right to a speedy trial under the IAD to resolve the detainer.  At the bottom of the document is this note from the records manager: "You will need to contact DOC Detainer," followed by a mailing address in Richmond.  *Id.* at 25.

In January 2021, Rogopoulos filed an Informal Complaint under the prison grievance procedures complaining that the warden had not processed his request for disposition of the detainer.  In response, the records manager wrote:

> Mr. Rogopoulos, according to the attached records, you were afforded the opportunity to a Speedy Trial.  Papers were sent to DOC Detainer Unit – Melanie Cale.  My records are showing you refused to sign.
>
> If you have any further questions, you need to write:
> DOC Detainer Unit/Melanie Cale
> PO Box 26963  Richmond, VA 23261.

*Id.* at 18.

By letter dated August 13, 2021, a VDOC Detainer Unit staff member notified the Middlesex District Attorney's office that Rogopoulos "will release to your

Middlesex District Attorney, MA detainer on 09/16/2021." Cale Aff. Enclosure E, ECF No. 19-1. This letter also indicated that Rogopoulos had refused to waive extradition at a court hearing on September 10, 2021, and that to continue his confinement on the Massachusetts charges, Middlesex would need to arrange to transport and house Rogopoulos at a local jail facility. Apparently, Middlesex authorities made the required arrangements. When Rogopoulos completed his Virginia sentence and was released from VDOC custody, he was transported to the Piedmont Regional Jail as a pretrial detainee under the Massachusetts charges because he was contesting extradition to that state. In January 2022, Rogopoulos provided the court with a change of address to a non-prison location in Farmville, Virginia.

Rogopoulos filed his § 2241 Petition in June 2021, claiming violations of the IAD and various constitutional provisions. Liberally construed, his Petition and his response to Respondent's motion assert that the detainer based on the Middlesex County charges "was lodged on June 9, 2008," Br. Opp'n 2, ECF No. 23; that VDOC authorities delayed notifying him of the detainer until 2014; that when prison authorities showed him IAD forms in 2014, they used the word "charge," rather than detainer, and he was afraid to sign anything without an attorney to advise him; and that after he discovered the existence of the detainer in 2020, he wrote letters or requests to the warden at Dillwyn, the Middlesex County court, the Virginia

Governor, VDOC Detainer Unit, and a public defender's office in Boston, trying to invoke the IAD speedy trial provision to resolve the detainer, but received no response. As relief in this case, Rogopoulos asks this court to dismiss the Massachusetts detainer.

Respondent has filed a Motion to Dismiss and attached several exhibits. Rogopoulos has responded, making the motion ripe for disposition.

II.

Rogopoulos complains that VDOC officials failed to notify him of the Massachusetts detainer in a timely fashion, which prevented him from requesting earlier disposition of the charges under IAD Article III. This claim rests on his assertions that the detainer was lodged in June 2008 and that the failure to notify him of that detainer until 2014, or to verbally refer to it as a detainer, somehow violated the IAD. The evidence simply does not support these assertions.

First, in June 2008, the Appomattox court had not yet sentenced Rogopolous and he had not yet entered VDOC custody. His sentencing and his transfer to VDOC did not occur until September 2009. Rogopoulos presents no evidence whatsoever that the authorities in Middlesex County requested placement of a detainer with VDOC Detainer Unit, or that the Detainer Unit issued a detainer in June 2008, more than a year before Rogopoulos had even been sentenced or received into VDOC custody.

Second, Respondent's evidence shows that VDOC received a letter requesting a detainer on the Middlesex charges in November 2014 and days thereafter notified the Massachusetts prosecutor that a detainer had been placed. As stated, VDOC's Detainer Notification form, under the heading "Detainer Information," includes the phrase "Date Issued: 06/09/2008." Pet. 23, ECF No. 1. From the form and the record as a whole, I construe this information as the likely date on which the untried Middlesex charges issued — not as the date when any VDOC official received notice of those charges or placed a detainer based on those charges against Rogopoulos.

Third, I cannot find any IAD violation concerning VDOC officials' duty to notify Rogopoulos of the detainer. The evidence indicates that within days of receiving notice of the Middlesex charges and the detainer request in 2014, VDOC officials notified Rogopoulos of the detainer as required under the IAD. On the face of the IAD forms, large or bold-faced text notified Rogopoulos of the detainer based on the pending Middlesex charges and of the opportunity to request resolution of those charges. Rogopoulos now contends that officials used the word "charge" (instead of "detainer") when verbally discussing the forms with him, and he did not want to sign anything without counsel or a personal copy of the document. Whether or not Rogopoulos understood the purpose of the forms, however, I cannot find that VDOC officials failed to comply with their duties under the IAD to inform him of the detainer and IAD speedy trial procedures.

Rogopoulos also contends that he made a request for disposition of the detainer charges in January 2021, but that the warden "ignored" it. Compl. 14, ECF No. 1. The record indicates that prison officials believed they had complied with their obligations under IAD speedy trial requirements when they provided IAD forms to Rogopoulos in 2014 and again in 2018, which he refused to sign. Even if some violation of IAD provisions occurred in Rogopoulos's case in 2021, however, his allegations do not state any claim for relief in this habeas corpus proceeding based on such alleged violations. Courts, including the Fourth Circuit, have held that claimed violations of the trial time limits in Article III of the IAD "do not constitute fundamental defects and are not generally cognizable under federal habeas corpus provisions absent a showing of prejudice." *Kerr v. Finkbeiner*, 757 F.2d 604, 607 (4th Cir. 1985) (citing other cases). Rogopoulos has not stated facts showing that he suffered any prejudice from the detainer during his incarceration in Virginia or when defending against the charges underlying that detainer. Accordingly, his submissions do not state any claim upon which relief could be granted in this § 2241 case based on alleged IAD violations.

Finally, the record indicates that Rogopoulos is no longer incarcerated. Thus, I cannot find any viable claim he could pursue in this court regarding the Massachusetts detainer. A detainer only operates to hold a defendant in detention pending his completion of another state's sentence. As discussed, Rogopoulos has

been released from his Virginia sentence. He was also later released from detention based on the Massachusetts charges and is not currently incarcerated.[4] In short, Rogopoulos simply has not demonstrated any grounds on which I could grant § 2241 habeas relief regarding the Massachusetts detainer he challenged in this action.[5]

### III.

For the stated reasons, I will grant the respondent's Motion to Dismiss and dismiss the § 2241 petition with prejudice.

A separate Final Order will be entered herewith.

DATED: June 22, 2022

/s/ JAMES P. JONES
Senior United States District Judge

---

[4] Rogopoulos remains free to raise such IAD-related defenses as he may have during any future proceedings on the Massachusetts charges, if warranted.

[5] In the response to the Motion to Dismiss, Rogopoulos asserts that the court should grant him some other form of relief, such as monetary damages or unspecified declaratory or injunctive relief. These forms of relief are not available in a habeas corpus action.